Gabrielli, J.
The Village of Philmont, in 1911, was required to file a map and description of its territorial limits with the Secretary of State pursuant to chapter 64 of the Laws of 1909, as amended by chapter 205 of the Laws of 1911. This statute specifically directed the president of the village to "cause to be prepared an outline map and description of the corporate limits of * * * [the] village, * * * which map and description shall be certified by him as true and correct”. It is conceded by respondent village that the lands of appellants and others similarly situated are outside the boundaries of the village as delineated by the map and description filed with the Secretary of State. Uncontroverted also is the fact that none of the lands in question have been carried on the village tax rolls, nor have the owners of these lands received village services, for at least 45 years. Indeed, there is no claim that any of the properties beyond the limits of the 1911 map and description were ever subject to village taxation or were ever accorded essential village services such as police and fire protection or street maintenance.
Suddenly, in February, 1973, appellants were notified that, commencing June 1, 1973, their properties would be added to the village tax rolls. It appears that this action was occasioned by the entirely inadvertent and fortuitous discovery of the *10 New York State Department of Audit and Control that the boundaries established by the inhabitants of Philmont at the time of its incorporation in 1892 (pursuant to the provisions of L 1870, ch 291) encompassed appellants’ lands. It should be reiterated, emphatically, that there is no evidence whatsoever that the Village of Philmont exercised dominion of any nature over the disputed lands at any time during the more than 80-year period since its "incorporation”.
The question posed by this controversy, therefore, is whether a lengthy period of acquiescence in certain boundaries and the failure to exercise jurisdiction over particular properties operates to preclude a village from asserting at the present time that such properties are within its territorial limits. Appellants, suing on their own behalf, and on behalf of other landowners similarly situated, and intervenor Town of Claverack, claim that the more than 80-year period of acquiescence estops respondent Village of Philmont from including appellants on its tax rolls. The Town of Claverack further contends that allowing Philmont to include the subject properties within its territory would adversely affect the town by decreasing the land area under its direct control, decreasing its tax income and seriously undermining the bond issue of the Mellenville Fire District.* Respondent was victorious in the Appellate Division which held that the original 1892 boundaries of the village must control and that acquiescence by the village in different boundaries was of no consequence. We do not agree.
Although we have not previously had occasion to pass upon the question, it is well settled and has been the rule in other jurisdictions that "[l]ong acquiescence in the location of municipal boundaries by the corporation and the inhabitants thereof where all municipal action and improvements have been done under the assumption that such are the boundaries will support the conclusion that such are the true boundaries notwithstanding they were not originally so located” (2 McQuillin, Municipal Corporations [3d ed], § 7.09, p 305; see, e.g., Thomas v Parsley, 283 Ky 393; Village of Elberta v City of Frankfort, 347 Mich 173; State ex rel. Columbia Bridge Co. v City of Columbia, 27 SC 137; Scotch Plains Twp. v Town of Westfield, 83 NJ Super 323; Starry v Lake, 135 Cal App 677; *11 62 CJS, Municipal Corporations, § 40). We hold that the doctrine of acquiescence is applicable in the instant case where, by custom, usage and the passage of time, disputed territory has been assumed by all interested persons to be beyond the boundaries of one entity of local government and within those of another, and where property owners or adjacent units of local government have relied to their detriment upon the inaction and passivity of a municipal corporation to which knowledge of the original boundaries at the time of incorporation may be imputed.
The doctrine of acquiescence is of particular importance in, and indeed, is predicated upon, the situation in which "personal, civil and political rights have become fixed according to the boundaries established by usage” (2 McQuillin, Municipal Corporations [3d ed], § 7.09, p 306; Thomas v Parsley, 283 Ky 393, supra). In this case, appellants and intervenor have relied upon the boundaries so established. In the purchase of land outside corporate village limits, it is generally of paramount concern to the purchaser that the property not be subject to the village tax, and we may assume that appellants and their predecessors in title took this factor into consideration in purchasing their properties. For a period of several decades appellants or their predecessors have been required either to install their own wells or to personally bear the expense for the extension of water lines from the village water system to their premises and pay a higher water rate than that enjoyed by residents of the village. Furthermore, the interests of the Town of Claverack, which has provided all municipal services for the property owners here, are also at stake since it too has relied upon the boundaries established by custom and usage through the years. In particular, the fiscal integrity of the bond issue of the Mellenville Fire Department may be jeopardized since, if the village is successful here, the Mellenville Fire District area will be reduced and bonding obligations may be imperiled. As far as can be ascertained from the record, since 1892, the Town of Claverack has borne all the capital and maintenance costs for the disputed area. The exercise of corporate power on the part of the Town of Claverack over the disputed area was obviously within the knowledge of the Village of Philmont which has acquiesced in this state of affairs. In adopting the doctrine of acquiescence in this case, we hasten to add that no fixed time period may be specified to automatically trigger the application of the doctrine; rather, *12 the sufficiency of the period of acquiescence depends upon the circumstances of a particular case.
We note also that the theory articulated herein bears a close resemblance to the concept of estoppel which, we have held, may be asserted against a municipality (see, generally, Bender v New York City Health & Hosps. Corp., 38 NY2d 662; Planet Constr. Corp. v Board of Educ. of City of N. Y., 7 NY2d 381; 21 NY Jur, Estoppel, §§ 35, 82; 28 Am Jur 2d, Estoppel and Waiver, §§ 128, 129, pp 792-796; Ann., 1 ALR2d 338, 351-358). The basic elements of estoppel are present in this case: a duty to speak, a failure to speak and damage to another party directly due to this silence (see 21 NY Jur, Estoppel, § 30, pp 40-41, and cases cited therein). It would certainly be inequitable to permit the Village of Philmont to successfully maintain, at this point in time, that the 1892 description establishes its true boundaries when this position is inconsistent with its posture of silence and inaction during the past 80 years upon which appellants and the Town of Claverack have relied; this continuing course of conduct may thus be deemed to have been misleading and deceptive.
True, estoppel may not be invoked to prevent a municipality from disclaiming the unauthorized or unlawful acts of its officers (Town of Guilderland v Swanson, 41 Misc 2d 398, mod 29 AD2d 717, affd 24 NY2d 872; Abell v Hunter, 211 App Div 467, affd 240 NY 702). But in this case, the acquiescence of the village is not predicated upon any unauthorized acts of village officials but, rather, upon a period of inaction and passivity on the part of the village itself as a corporate entity, its inhabitants and its officials for more than 80 years. The affirmative action of the village in limiting its corporate boundaries in 1911 serves as a further indication that the village, following the initial survey and description, never considered the subject properties within its borders. If the village, acting through its officers, wished to assert jurisdiction over the disputed territories, a duty to come forward and do so came into existence at least at the time of the 1911 survey and filing (see 21 NY Jur, Estoppel, § 32, pp 43-44). As noted above, knowledge of the discrepancy between the 1892 and the 1911 surveys must be imputed to the village. It is important to note that the 1911 description and the certification of its accuracy by the village president was an official act mandated by statutory directive. Hence, there can be no claim that this act was beyond the power of the village president.
*13 This case should be distinguished from those decisions in other jurisdictions which have refused to apply the doctrine of acquiescence in situations where the original boundaries were set by the Legislature (see, e.g., Marsha v Richland County, 81 SC 135; Town of Stephens City v Zea, 204 Va 88; Town of Brookline v Town of Newfane, 126 Vt 179; Crescent City v Dodd, 18 P2d 999 [Cal]). Of course, where the State Legislature has acted to establish or alter municipal boundaries, the doctrine of acquiescence has no application (cf. City of New York v Village of Lawrence, 250 NY 429, 437-438). Here, however, Philmont itself established its original boundaries pursuant to the law then in force (L 1870, ch 291). Despite these original boundaries, the subsequent inhabitants of the village, who stand in the stead of the original dwellers, did not assert jurisdiction over the disputed territory but acquiesced in the administration of the area by another local government unit.
We are unpersuaded by the argument advanced by respondent that section 18-1804 of the Village Law (formerly Village Law of 1909, § 349), which sets forth a statutory procedure for diminishing village boundaries, should alter our conclusion here. The provisions contained in this section of the Village Law merely prescribe a procedure whereby inhabitants of an area already recognized as part of a village, but not receiving village services, may petition to have their properties excluded from the village. These provisions have no bearing on the doctrine of acquiescence which is premised on the claim that certain territory is not, and has never been, within the corporate limits of a municipal corporation.
The court below erred in holding that the boundary dispute should be submitted to the board of supervisors of the county. The authority for this method of resolving the problem, section 359 of the Village Law, has been repealed and no new statutory authority was enacted in its place (L 1972, ch 892).
Treating this controversy as an action for a declaratory judgment, we conclude that appellants’ properties and the properties of other landowners similarly situated are not within the Village of Philmont and that the boundaries delineated by the map and description filed pursuant to chapter 205 of the Laws of 1911 are the true and correct boundary lines of the Village of Philmont.
Accordingly, the order of the Appellate Division should be reversed and judgment granted to appellants.
*14 Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, with costs, and judgment granted to appellants.

 The subject properties are located within the hamlet of Mellenville which has heretofore been administered by the Town of Claverack.