OPINION OF THE COURT
Beverly S. Cohen, J.
Defendants St. Mary’s Home for Working Girls, Inc., and Congregation of the Daughters of Divine Charity move for leave to amend their answer, to vacate the preliminary injunction, and for summary judgment (CPLR 3212) dismissing the complaint.
St. Mary’s Home for Working Girls, Inc., is located at 225 East 72nd Street in New York City. It is a residence for single women, staffed by the Daughters of Divine Charity, an order of Roman Catholic nuns who reside on the premises (collectively, St. Mary’s). One hundred and fifty-two rooms are rented to women who currently pay $120-$140 per week for a private room with sink and once-a-week maid service (with some exceptions that are not relevant to the instant case). Each floor has a lounge, kitchenette, laundry, showers and a bathroom. Defendants state that the purpose of the home is to provide temporary housing for working girls between the ages of 18 to 45, for a period not to exceed four years. However, in the past, this restriction was not strictly enforced. Many residents voluntarily move on to other accommodations and, in the past, those who did not were asked to leave but not evicted.
In 1982, a change in the administration of the Sisters of Charity brought a new determination to enforce the age and four-year residency restrictions. In September and October *496 1982, a series of meetings were held by St. Mary’s to remind the residents of the residency restrictions. All residents who had exceeded the four-year restriction were given two years to find alternative housing. Furthermore, residents are now required to state their age on the residency application.
At the end of the two years, the residents who were affected by the restriction, many of whom had lived at St. Mary’s for more than six years, brought an action seeking a declaratory judgment under Executive Law § 290 et seq., the New York State Human Rights Law; and, a permanent injunction prohibiting St. Mary’s from terminating their tenancies. The complaint alleges that the determination to enforce the four-year restriction was "a device to camouflage the actual intent of defendants to rid the Residence of its older women,” and asserts seven causes of action: violation of Executive Law § 296 (2-a) (c), which prohibits inquiry or record concerning the age or religion of an individual seeking to rent any publicly assisted housing accommodation (first cause of action); violation of Executive Law § 296 (5) (a) (3), which prohibits limitations to rentals based upon age or religion (second cause of action); violation of Executive Law § 296 (2-a), prohibiting age discrimination in the rental of publicly assisted housing (third cause of action); violation of Executive Law § 296 (5) (a), prohibiting age discrimination (fourth cause of action); and, the fifth, sixth and seventh causes of action asserting that defendants have breached their agreement to provide plaintiffs with permanent housing and/or waived or are estopped from terminating their residency, respectively.
A preliminary injunction was granted on August 23, 1985 (Leonard Cohen, J.), and is extant.
In addition, plaintiffs in the instant action filed petitions with the Division of Housing and Community Renewal (DHCR), claiming that the defendants’ attempts to terminate their tenancies were illegal because the accommodations were subject to rent stabilization. Defendants argued, and the DHCR held, that St. Mary’s was exempt from the Rent Stabilization Code because the premises are operated for charitable purposes on a nonprofit basis. The DHCR’s decision was predicated on evidence submitted by St. Mary’s; United States Treasury Department’s Internal Revenue income tax exemption for Catholic charitable and religious institutions, and the New York City real estate tax exemption for the premises. The petition for administrative review, filed by plaintiffs herein, seeking to annul this determination was *497 denied. Plaintiffs brought an article 78 proceeding and, in its decision dated July 23, 1990, this court remanded this issue back to the DHCR, finding that the "DHCR failed to seek documentation of the conclusory claims of St. Mary’s that all income from the subject apartments is used exclusively for the operating expenses of the apartments and that the premises is operated on a charitable basis.” Both sides appealed and this issue is still pending before the Appellate Division.
On the instant motion for summary judgment, St. Mary’s states that as a religious institution, it is exempt from Executive Law § 296. Executive Law § 296 (11) states: "Nothing contained in this section shall be construed to bar any religious * * * organization * * * from limiting employment or sales or rental of housing accommodations or admission to or giving preference to persons of the same religion * * * or from taking such action as is calculated by such organization to promote the religious principles for which it is established and maintained.”
Plaintiffs argue that defendants cannot "have it both ways”, arguing before the DHCR that St. Mary’s is a charitable institution and, in the instant action, that it is a religious institution. However, in fact, defendants can and do have dual legal identities. They are a religious order engaged in charitable work. Thus, there is nothing inconsistent in defendants’ claim to an exemption as a charity before the DHCR and as a religious institution under the Human Rights Law. An entity or individual may have a different status under different statutes.
There is no dispute that the Congregation of Daughters of Divine Charity is a religious organization. In fact, in cases similar to the facts herein, the State Division of Human Rights and the courts have found that the religious exemption applies (see, Garcia v Religious Order of Mary Immaculate, Determination of State Div of Human Rights, June 27, 1985, Martinez, Regional Director, case No. 1B-H-A-85-101126H; Cowen v Dale Assembly, 44 AD2d 772).
The defendants submit literature and affidavits to demonstrate that their mission and chief ministry, since their founding in Vienna, Austria, in 1868, "has been to provide temporary homes under proper moral influence for young women of limited means who come into cities seeking to establish themselves and begin an independent life”. In the view of the defendants, the age limitation is directly related to and in *498 tended "to promote the religious principles for which it [the Order] is established and maintained”.
Plaintiffs correctly argue that a religious group’s right to such exemption, even under a demonstration of relationship of policy to the religious principles, is not unfettered (see, Jews For Jesus v Jewish Community Relations Council, 968 F2d 286 [2d Cir 1992]). Defendants’ policy violates the law against age discrimination and no exemption for religious organizations exists with respect to age discrimination. A catch-all phrase allowing "such action as is calculated * * * to promote” cannot be used to broaden the specific exemption granted by Executive Law § 296 (11) to allow discrimination against another protected group. The discrimination on the basis of age alleged here offends the principle of equal opportunity and defendants’ mission can be achieved without resort to such discrimination.
Defendants are not permitted to discriminate on the grounds of age. However, the four-year residency restriction may be permissible to further their mission of providing a safe haven for women of limited means embarking on a new life in the city. It is true that prior to 1982, the four-year limit was not enforced, but the application forms signed by plaintiffs and the intervenor, to wit: Priolo, Wooley, Clark, Wright, Hockett, Borko and Martin, respectively, clearly state that a condition of admission is, "1. That length of stay will be no longer than four years”.
Therefore, the heart of plaintiffs’ dispute with St. Mary’s rests in their remaining causes of action alleging breach of contract, waiver and estoppel (fifth through seventh causes of action). The collective affidavits of plaintiffs state that they were led to believe they could reside at St. Mary’s indefinitely, "regardless of any written policies”.
Defendants’ claim that this oral contract runs afoul of General Obligations Law § 5-701 (a) and/or General Obligations Law § 5-703 (1) is incorrect. Because these agreements could be terminated by either side within a year, they are outside the statute (North Shore Bottling Co. v Schmidt & Sons, 22 NY2d 171). However, this collective averment runs afoul of the paroi evidence rule. The bills of particulars of the seven remaining plaintiffs state that the oral promises were made prior to or contemporaneously with the time of becoming a resident (or else no specific date is given). Even absent a merger clause, if the contract is clear and unambiguous and *499 complete (see, Bank Leumi Trust Co. v Wulkan, 735 F Supp 72 [SD NY 1990]), evidence of prior or contemporaneous oral agreements may not be offered to contradict the writing (Shah v Eastern Silk Indus., 112 AD2d 870, affd 67 NY2d 632). Therefore, any claim for breach of contract based upon the oral promises does not lie and the fifth cause of action is dismissed.
In reality, what the parties had agreed to was a periodic tenancy, terminable by the landlord upon proper notice. The issue is can St. Mary’s exercise its right to terminate in view of the apparent failure to enforce the four-year rule prior to 1982.
Defendant seeks to amend its answer to include the defense of collateral estoppel, asserting that the equitable defense of waiver has been decided conclusively against plaintiffs in the DHCR proceeding by the Deputy Commissioner. However, plaintiffs argue that the Commissioner’s decision finding that St. Mary’s had not waived its right to enforce the four-year residency limitation was outside the scope of the DHCR proceedings; to wit, ultra vires. The disputed evidence, the affidavit of Sr. Albert Dougherty, is part of the record before the Appellate Division which may rule definitively on this issue. Pending such determination, the court will not apply collateral estoppel and defendants’ motion to amend is denied, without prejudice to renewal after resolution of the appeal.
Turning to the merits of this defense, waiver is an intentional relinquishment of a known right and should not be lightly presumed (Frank Corp. v Federal Ins. Co., 70 NY2d 966). Plaintiffs offer no evidence from which a clear manifestation of intent by defendants to relinquish the right to enforce the restrictions as to residency can be inferred. Plaintiffs, however, have raised a sufficient triable issue to warrant a hearing.
Finally, the court turns to the issue of equitable estoppel. Plaintiffs are alleging that St. Mary’s failure to enforce the residency requirement amounts to estoppel by silence or acquiescence. They have attempted to allege (1) a duty to speak, (2) failure to do so and (3) reliance and change in position to their disadvantage (La Porto v Village of Philmont, 39 NY2d 7, 12). However, merely failing to exercise a right does not give rise to estoppel. Plaintiffs must show that it would be unequitable to permit the exercise of that right after a lapse of time (see, Bethpage Theatre Co. v Shekel, 133 AD2d 62). *500 Defendants have not attempted to conclusively demonstrate that estoppel should not occur and this issue of fact remains to be decided (see generally, Zuckerman v City of New York, 49 NY2d 557).
Accordingly, defendants’ motion for summary judgment is denied. The issues of waiver and estoppel of the four-year residency limitation must be determined after trial. A note of issue has already been filed and the parties are directed to proceed to trial expeditiously on the issue of whether defendants have waived, or are otherwise estopped from enforcing, the residency limitations.
The preliminary injunction remains in effect to preserve the status quo.