**Robert PETRELLI, Plaintiff–Appellee–Cross–Appellant,**

v.

**CITY OF MOUNT VERNON, Defendant–Appellant–Cross–Appellee.**

Nos. 254, 374, Docket 93–7338, 93–7340 (XAP).

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1993.

Decided Nov. 12, 1993.

Terrence O'Neil, Rains & Pogrebin, P.C., Mineola, NY, for defendant-appellant-cross-appellee.

David J. Sutton, Garden City, NY, for plaintiff-appellee-cross-appellant.

Before: OAKES and MAHONEY, Circuit Judges, and MISHLER, District Judge.*

MISHLER, District Judge:

This case comes before us on appeal by defendant City of Mount Vernon and cross-appeal by plaintiff Robert Petrelli from a grant of summary judgment in favor of Petrelli by the United States District Court for the Southern District of New York (Duffy, J.). *Petrelli v. City of Mount Vernon*, 796 F.Supp. 748 (S.D.N.Y.1992). For the reasons stated in this opinion, we reverse the judgment below, dismiss the cross-appeal, and remand with instructions that summary judgment be entered in favor of the defendant.

## BACKGROUND

This case arises out of Petrelli's claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (the ADEA). Much of the factual setting of this case arose as a result of uncertainty in the state of the law. We will first lay out the legal background out of which this case grew, and then explain the factual setting, before proceeding to our analysis.

Legal Background

### 1. N.Y.Civ.Serv.L. § 58(1)(a)

Section 58(1) of the New York Civil Service Law, the enforcement of which provides the basis for Petrelli's claim under the ADEA, states in pertinent part that:

Notwithstanding any other provision of this law or any general, special or local law to the contrary, no person shall be eligible for provisional or permanent appointment in the competitive class of the civil service ... as a police officer of any police force, or police department of any county, city,

town ... or police district unless he shall satisfy the following basic requirements:

(a) he is not less than twenty nor more than twenty-nine years of age....

In *McMahon v. Barclay*, 510 F.Supp. 1114, 1117 (S.D.N.Y.1981), Judge Sand declared § 58(1)(a) unconstitutional under the Equal Protection Clause of the Fourteenth Amendment, since the age requirement was not rationally related to a legitimate governmental interest. In response to *McMahon*, the New York State Civil Service Commission (the Commission) suspended enforcement of § 58(1)(a) from September 1981 through January 1987. The City of Mount Vernon, following the Commission's lead, also suspended enforcement of § 58(1)(a).

Soon after *McMahon*, two further cases concerning § 58(1)(a) were decided. In *Colon v. City of New York*, 535 F.Supp. 1108, 1113 (S.D.N.Y.1982), Judge Leval found that § 58(1) did not violate equal protection and awarded summary judgment to the defendant. And in *Sica v. County of Nassau*, 36 Fair Empl.Prac.Cas. (BNA) 369, 1982 WL 31011 (E.D.N.Y.1982), then-District Judge Pratt found that § 58(1)(a) "is rationally related to a valid legislative goal", expressly disapproving Judge Sand's holding in *McMahon*. While the status of § 58(1) was far from settled, it is clear that there was much confusion about its constitutional status.

### 2. The ADEA

The ADEA was enacted in 1967 to combat age discrimination in employment settings. 29 U.S.C. § 621 (1988). During the period in question, it prohibited discrimination against those who had had a fortieth birthday but not a seventieth birthday. 29 U.S.C. § 631(a) (1985).[1] Since § 58(1)(a) discriminated against anyone over the age of 29, it was unclear how the ADEA interacted with that section.

In 1985, this Court held in *Hahn v. City of Buffalo*, 770 F.2d 12 (2d Cir.1985), *aff'g* 596

---

* Hon. Jacob Mishler, Senior District Judge of the United States District Court for the Eastern District of New York, sitting by designation.

1. The ADEA was since amended to eliminate the upper age requirement; it now covers "individuals who are at least 40 years of age." 29 U.S.C. § 631(a) (1988).

F.Supp. 939 (W.D.N.Y.1984), that the ADEA applied to invalidate application of § 58(1)(a) to persons between 40 and 70 years old. In discussing the geographic scope of the opinion (it was to cover all of New York State), the panel was somewhat unclear as to whether New York was precluded from enforcing § 58(1)(a) at all, or only with respect to those covered by the ADEA, i.e., those over 40 years old. *Id.* at 15. Finally, in *Doyle v. Suffolk County,* 786 F.2d 523 (2d Cir.), *cert. denied,* 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986), this Court held that the ADEA did not invalidate § 58(1)(a) with respect to persons between 29 and 40 years old. *Id.* at 528. The court further held that the application of § 58(1)(a) to persons between the ages of 29 and 40 did not violate the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 528–29.

On March 2, 1983, the Supreme Court had decided in *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), that the ADEA applied to state and local public safety officers. *See* H.R.Rep. No. 756, 99th Cong., 2d Sess. 6 (1986). In response, Congress amended the ADEA to allow the States to discriminate on the basis of age in the hiring of police officers and firefighters. 29 U.S.C. § 623(j) (1988). Section 623(j) allowed a state or local government employer, as of January 1, 1987, to discriminate based on the age of an applicant for a public safety officer position if "the individual has attained the age of hiring ... in effect under applicable State or local law on March 3, 1983 ...." The amendment superseded this Court's decisions in *Hahn* and *Doyle.* Thus employers, including States and localities, that had a maximum age requirement in effect on March 3, 1983 could impose that requirement subsequent to January 1, 1987 and until December 31, 1993.[2]

Factual Background

In July 1985, Petrelli sat for the civil service examination in response to an official recruitment announcement by the Municipal Civil Service Commission of the City of Mount Vernon (the MCSC). In its announcement, the MCSC stated under "Minimum Qualifications" that "[p]ursuant to the [ADEA], there is no *maximum* age limitation required by the City of Mount Vernon." (emphasis in original). At the time he took the exam, Petrelli was 40 years old. In May 1986, after passing the written and physical exams, Petrelli was placed on the civil service eligible list. He ranked 55 out of approximately 300 candidates.

On February 3, 1987, the MCSC advised Petrelli that, in response to both *Doyle* and the ADEA amendment (i.e., 29 U.S.C. § 623(j)), his name was being removed from the eligible list for Police Officer. After learning of this development, Petrelli wrote several letters to the MCSC and the Commission. Among other things, he asked both the MCSC and the Commission whether § 58(1) was in effect on March 3, 1983.

Petrelli received seemingly conflicting responses. In letters dated June 24 and September 22, 1987, the Commission stated that, although enforcement of § 58(1) had been suspended in response to *McMahon,* the statute itself remained in effect. Mount Vernon responded in a letter to Petrelli dated September 14, 1988, that "[t]he City of Mount Vernon lifted its maximum age requirement in or about September, 1981," and that the "maximum age requirement was reinstated by the City of Mount Vernon on January 1, 1987." The City's letter also said that at the time of his application Mount Vernon "was not enforcing the maximum age requirement" but that in 1987 "State Law required that the maximum age requirement be reinstated." *Id.* In addition to communicating with the MCSC and the Commission, Petrelli also corresponded with the EEOC about his situation.

By letter from the City dated October 3, 1988, Petrelli learned that his appointment as a police officer had been passed over in favor of a younger candidate. On December 29, 1988, Petrelli filed a formal charge of age discrimination with the EEOC. On October 6, 1989, Petrelli filed the summons and complaint in this case. The case was originally before Judge Amon in the Eastern District of New York, but was transferred by stipulation of both parties to the Southern District,

2. Absent affirmative action by Congress, § 623(j) will be repealed on December 31, 1993.

where it was assigned to Judge Duffy, who granted summary judgment in favor of Petrelli on June 24, 1992. This appeal ensued.

## DISCUSSION

On appeal from a grant of summary judgment, this Court determines *de novo* whether there is a genuine issue of material fact, and whether the moving party was entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Healy v. Rich Products Corp.,* 981 F.2d 68, 72 (2d Cir.1992); *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); FED.R.CIV.PRO. 56(c). This case presents no disputed issues of fact. There is an issue with respect to the timeliness of Petrelli's claim. The main question presented, however, is whether Section 58(1)(a) of the New York Civil Service Law was in effect on March 3, 1983.

Was Petrelli's claim timely filed?

■ As a preliminary matter, Mount Vernon asserts that Petrelli's claim is time-barred, since he did not sue until more than two years after being notified on February 3, 1987, that his name was being removed from the eligible list. Petrelli responds by noting that it was not until October 3, 1989, that he was actually passed over in favor of a younger candidate, and that he filed suit with the EEOC on December 29, 1989, 87 days after he was first able to make out a prima facie case of discrimination. Neither position is wholly correct, but we hold that, under the circumstances of this case, Petrelli's claim is timely.

A complainant residing in New York State must file an age discrimination complaint with the EEOC "within 300 days after the alleged unlawful practice occurred". 29 U.S.C. §§ 626(d)(2); 633(b). According to our decision in *Economu v. Borg–Warner Corp.,* 829 F.2d 311 (2d Cir.1987), the 300–day period begins to run from the day when a plaintiff *"receive[s] notice* sufficiently definite to permit him to make out a *prima facie* case of age discrimination . . . ." *Id.* at 316 (emphasis added). The question, then, is when did Petrelli receive such notice.

"To make out a *prima facie* case of age discrimination, plaintiff must show that (1) he belongs to the protected age group, (2) he applied for and was qualified for the position sought, (3) he was not hired despite his qualifications, and (4) *the position was ultimately filled by a younger person."* *Taggart v. Time Inc.,* 924 F.2d 43, 46 (2d Cir.1991) (emphasis added). In discussing whether plaintiff in *Taggart* had made out a *prima facie* case, this Court included the consideration that "all of Time's new hirees were younger than [plaintiff] was." *Id.* Applying this analysis to the case at bar, Petrelli could not make out a *prima facie* case of age discrimination until October 3, 1989, when he discovered that the position had been filled by a younger candidate.

We base this conclusion in part on the fact that, in this case, Petrelli exercised reasonable diligence in trying to determine whether a younger candidate had in fact been hired in his place. His letters and Freedom of Information Act requests indicate that Petrelli did not sleep on his claim; he attempted diligently to find out what Mount Vernon had done with respect to his appointment. That being the case, we think that Petrelli did not receive the notice required by *Borg–Warner* until October 3, 1989. His complaint, filed with the EEOC on December 29, 1989, was therefore timely filed within the 300 day period.[3]

Was § 58(1)(a) in effect on March 3, 1983?

■ In awarding summary judgment to Petrelli, the District Court relied on assertions by Mount Vernon that the maximum age limitation was not in effect as of March 3, 1983. Citing the original recruitment announcement ("there is no *maximum* age limitation required by the City of Mount Vernon.") and Mount Vernon's response to Pe-

---

**3.** If all of the first three elements are present, but the employer decides at the last minute to hire the older candidate, no discrimination has occurred even if the employer earlier notified that candidate that he would not be considered because of his age. This gives employers an incentive, even after notice that they are going to discriminate, to change their minds, behavior that the law should encourage.

trelli's Freedom of Information Act request ("The City of Mount Vernon lifted its maximum age requirement in or about September, 1981."), Judge Duffy concluded that he "need look no further than Mount Vernon's very own actions and representations to Petrelli to find that no maximum age requirement was in effect in Mount Vernon on March 3, 1983." 796 F.Supp. at 752.

The record shows letters from the Commission to Petrelli indicating that the State of New York considered the law to be in effect throughout the period from 1981 to 1987. *See, e.g.,* Letters from the New York State Department of Civil Service to Petrelli, dated June 24, 1987 ("the statute remained in effect"); dated September 22, 1987 ("In the years of litigation Section 58 requirements continued to be in effect."). Judge Duffy, however, stated that he "prefer[red] to rely on Mount Vernon's own representations that the age limitation was not in effect rather than the state commission's blanket assertion that section 58 was in effect throughout the state on March 3, 1983." 796 F.Supp. at 752, n. 11. We believe that such reliance was misplaced. Mount Vernon argued below and in this Court that it was without power to waive a state law (and so was the Commission), even though its policy at the relevant time was not to enforce that law. This position is well-supported in the case law.

■  In *Martin v. State,* 86 A.D.2d 712, 447 N.Y.S.2d 41 (3d Dep't), *appeal denied mem.,* 57 N.Y.2d 602, 454 N.Y.S.2d 1026, 439 N.E.2d 1245 (N.Y.1982), the Appellate Division said that if requirements to hold a position are mandated by statute, "it is beyond the power and jurisdiction of the [New York State] Civil Service Commission or any other administrative body to confer upon an applicant eligibility for appointment denied to him by the Legislature." *Id.* at 43 (citations omitted). Section 58(1), like the law discussed in *Martin,* is a direct command of the New York State Legislature. It gives no discretion to the Commission or to the local governments responsible for its enforcement.[4] It is therefore beyond the power of

the Commission or the MCSC to alter its command.

In *Lockman v. Van Voris,* 49 A.D.2d 285, 374 N.Y.S.2d 778 (3d Dep't 1975), a candidate had been placed on the eligible list for police officer without having submitted to the physical examination required by N.Y.Civ.Serv.L. § 58(1)(c) and 9 N.Y.C.R.R. § 6000.3[c][2]. *See id.* 374 N.Y.S.2d at 779. Under the rules, the minimum standard of visual acuity for a police officer was 20/40 uncorrected vision. Nine months after his appointment as a police officer, Lockman took a physical exam at which his vision tested 20/70 uncorrected. He was subsequently removed from the position of police officer, and he sued for reinstatement.

The Appellate Division, in denying Lockman's request, said

> The Legislature in [§ 58(1)(c)] has expressly prohibited the employment of persons as police officers who do not meet specific physical requirements. That such requirements are formulated pursuant to a delegation of power by the Legislature does not change their status into a matter over which the Civil Service Commission would have jurisdiction and power to determine.... The certification and appointment having been in direct violation of section 58 of the Civil Service Law, the petitioner's termination.... must be affirmed.

*Id.* 374 N.Y.S.2d at 780–81; *see also Kofer v. Village of Pelham,* 710 F.Supp. 483, 484 n. 1 (S.D.N.Y.) (Westchester County personnel office "could not waive a law duly enacted by the state legislature." (citing *Lockman* )), *aff'd mem.,* 888 F.2d 126 (2d Cir.1989); *Wolff v. Hodson,* 285 N.Y. 197, 33 N.E.2d 90, 92 (N.Y.1941).

■  In the case at bar, the argument that the Commission and Mount Vernon were without power to suspend enforcement of § 58(1)(a) is even stronger than in *Lockman.* Section 58(1)(a) does not delegate any power to the Commission or to municipalities; it sets out the firm rule of the Legislature.

---

4. In contrast, section 58(1–a) explicitly gives the Commission the power to raise the age limit in response to a showing by a municipality of "aggravated recruitment difficulties" and a resulting "serious shortage of police officers." N.Y.Civ. Serv.L. § 58(1–a) (1983).

Neither the Commission nor Mount Vernon had jurisdiction to waive its requirements.

Mount Vernon also made this argument to the District Court, which concluded that Mount Vernon was trying to have its cake and eat it, too. "Mount Vernon cannot have it both ways. It cannot abide by a policy and a practice for over five years and now argue that it never had the authority to institute that policy and practice." 796 F.Supp. at 752 n. 11. We disagree. In our view, if a candidate who was between 20 and 29 years old had been denied a position because of the Commission's and the MCSC's policy of non-enforcement, he would have had a good cause of action against both agencies. This can only be the case if § 58(1)(a) was in effect on March 3, 1983 and during the entire period from 1981 to 1987.

We also note that considerations of federalism and comity would be undermined if state compliance with applicable federal court orders were penalized by the sort of ruling that Petrelli seeks in this case. As Judge Duffy noted, "[t]here is no evidence that Mount Vernon acted other than in good faith." Id. at 753–54 n. 14. Such good-faith adherence to applicable court decisions should be encouraged. We hold that, for purposes of the ADEA, Section 58(1)(a) was in effect on March 3, 1983. Petrelli's claim cannot stand, and summary judgment must be entered for the City of Mount Vernon.

■ Petrelli, below and on appeal, and the District Court both rely heavily on the statements of Mount Vernon that § 58(1)(a) had been "lifted" and suggest that the City should not be able to disavow now what it said in the past. Although it was not addressed as such, we read this to be an argument of equitable estoppel. The question of equitable estoppel is a fact issue, but since we believe that Petrelli would be unable to prevail in any subsequent trial, we do not remand for a hearing on this issue. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) ("there must be evidence on which the jury could reasonably find for the plaintiff.")

"The elements of estoppel are (1) material representation, (2) [reasonable] reliance and (3) damage." Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir.1993); see also 31 C.J.S. Estoppel § 138 (1964); 57 N.Y.Jur.2d Estoppel § 68 (1986). On the facts, Petrelli cannot show that he relied to his detriment. And even if he could, the law of equitable estoppel against the government acting in a governmental (as opposed to a proprietary) capacity would prevent his recovery.

Preliminarily, we note that Petrelli did not change his position in reliance on his placement on the eligible list; indeed, it was about two years before his name came up for consideration since he was a non-resident of Mount Vernon, and residents with equivalent scores were given preference over non-residents. He did not move to Mount Vernon; he did not leave another job in anticipation of appointment to Mount Vernon's Police Department. His position when Mount Vernon passed him over for consideration was the same as if he had never been considered at all. Petrelli's only "detriment" is the inability to be considered for a position for which he should never have been considered in the first place. Cf. Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). As a matter of law, this is insufficient to meet the burden of detrimental reliance.

■ Even if Petrelli could prove that he had reasonably relied to his detriment on Mount Vernon's statements, the law requires more than that when a party invokes equitable estoppel against a government (or its agent) acting in a governmental capacity. This is true whether State or federal law is applied, which issue we do not reach in this case. Under either federal or New York law, Petrelli's claim must fail. See, e.g., Heckler, 467 U.S. at 60–61, 104 S.Ct. at 2224–2225 (federal law; "When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined."); FHM Constructors, Inc. v. Village of Canton Housing Authority, 779 F.Supp. 677, 682 (N.D.N.Y.1992) (federal law; "in order to state a cause of action based on estoppel ... plaintiffs must allege willfulness, wantonness

and recklessness...."); *New York State Medical Transporters Assoc. v. Perales,* 77 N.Y.2d 126, 564 N.Y.S.2d 1007, 1010, 566 N.E.2d 134, 137 (1990) (estoppel against a governmental agency foreclosed " 'in all but the rarest cases.' " (citation omitted)); *City of New York v. City Civil Service Commission,* 60 N.Y.2d 436, 470 N.Y.S.2d 113, 120, 458 N.E.2d 354, 361 (1983) ("estoppel may not be applied to preclude a State or municipal agency from discharging its statutory responsibility."); *Hamptons Hospital & Medical Center, Inc. v. Moore,* 52 N.Y.2d 88, 436 N.Y.S.2d 239, 242, 417 N.E.2d 533, 536 (1981) ("In principle it would be unthinkable that [a government agency] through mistake or otherwise could be estopped from discharging the responsibility vested in it by legislative enactment."); *La Porto v. Village of Philmont,* 39 N.Y.2d 7, 382 N.Y.S.2d 703, 706, 346 N.E.2d 503, 506 (1976) ("estoppel may not be invoked to prevent a municipality from disclaiming the unauthorized or unlawful acts of its officers.").

## CONCLUSION

We hold that New York Civil Service Law § 58(1)(a) was in effect on March 3, 1983. For that reason, summary judgment for Petrelli was erroneous, and judgment must be entered for the City of Mount Vernon. Since any equitable estoppel claim Petrelli might make would fail at trial, such a claim does not present a genuine issue of material fact, *see Liberty Lobby, supra;* FED.R.CIV.PRO. 56(c), and summary judgment for Mount Vernon is directed. The judgment of the District Court is REVERSED, and the case is remanded to the District Court with instructions that judgment be entered in favor of the defendant-appellant-cross-appellee City of Mount Vernon. We DISMISS Petrelli's cross-appeal as moot.