[No. 20387-1-II. Division Two. February 6, 1998.]

THE TOWN OF RUSTON, *Respondent*, v. THE CITY OF TACOMA, *Appellant*.

*Robin Jenkinson, City Attorney,* and *John C. Kouklis, Assistant,* for appellant.

*James J. Mason* of *Eisenhower & Carlson,* for respondent.

SEINFELD, J. — The Town of Ruston brought this declaratory judgment action because of a dispute with the City of Tacoma over a parcel of filled tidelands on the west side of Commencement Bay. The trial court granted summary judgment to the Town of Ruston. We agree with Tacoma that its 1890 City Charter unambiguously establishes a boundary line that places the disputed property within Tacoma city limits and that no subsequent action modified this boundary. Thus, we reverse.

## FACTS

The territory at issue is the gray-shaded, triangular-shaped parcel shown on the map below.

The site formerly was part of American Smelting and Refining Company (ASARCO) and currently is part of a remediation and development project being conducted under the supervision of the United States Environmental Protection Agency.

In 1886, the Washington Legislature incorporated and in 1890 reincorporated the City of Tacoma. Both the 1886 and the 1890 charters contained the following metes and bounds description of the city limits, followed by a listing of some of the sections included therein:

> The corporate limits and boundaries of Tacoma shall be as follows: Commencing upon the shore line of Commencement bay, where it is intersected by the section line dividing sections twenty-three (23) and twenty-four (24) in township twenty-one (21) north of range two (2) east, and running thence south along section lines to southwest corner of section twenty-five (25), in said township . . . to west boundary of said Puyallup Indian reservation; thence northerly along the west boundary of said reservation to the north boundary of Pierce county; thence following said boundary northwesterly to a point opposite and *north of the point of beginning on the shore line of Commencement bay; thence south to the point of beginning— including sections twenty-four (24) and twenty-five (25) in township twenty-one (21) north of range two (2) east, sections twenty-nine (29), thirty (30), thirty-one (31), thirty-two (32), thirty-three (33) and thirty-four (34) in township twenty-one (21) north of range three (3) east and sections four (4), five (5), six (6), eight (8), nine (9), and fractional sections three (3) and ten (10) in township twenty (20) north of range three (3) east.*

*City of Tacoma Charter*, ch. I, § 2 (1886) (emphasis and bold added). This description, which encompasses almost all of the tidelands in Commencement Bay, created a north-south boundary line for Tacoma (Line A) that runs from the Pierce-King County line to a point on the western shoreline of the Bay.

In 1906, residents of the unincorporated area along the shoreline immediately northwest of Tacoma voted to form the Town of Ruston. Upon receiving the election results,

the Pierce County Board of County Commissioners issued an Order of Incorporation that described the new town's boundaries as follows:

> That portion of Pierce County, Washington, described as follows: The northeast quarter of Section twenty[-]three (23), in Township Twenty[-]one (21) North, Range Two (2) East of the Willamette Meridian, *and all of the Tide lands and harbor area adjacent to or in front of the same and not within the limits of the City of Tacoma, Washington* . . . .

(emphasis added).

This general description was followed by a metes and bounds description, which provided in pertinent part:

> [T]o the intersection of said line with the Shore line of Commencement Bay; thence *Northeasterly along the boundary line of the City of Tacoma* to the intersection of said boundary line with the outer harbor line as shown on the official plat of said harbor line on file in the office of the State Land Commissioner, at Olympia, Washington[.]

Order of Incorporation for the Town of Ruston (emphasis added). The northeasterly call in this metes and bounds description is inconsistent with the due north boundary described in the Tacoma City Charter. Based on this language, Ruston contends that the Ruston-Tacoma boundary runs perpendicular to the Bay's shoreline (Line B), not due north, and that Ruston's boundaries, therefore, include the shaded triangle.

The record contains evidence that in the last 90 years, the disputed area has been treated as being within Tacoma city limits. For example, the county assessor's maps have included the disputed area within the City. And the owner of property within the area, ASARCO, has implicitly recognized the area as lying within Tacoma by applying to Tacoma, rather than to Ruston, for the necessary permits to construct improvements on its property.

But in 1995, Ruston filed this action alleging that the Tacoma City Charter's boundary description was ambigu-

ous. It sought a declaration that Line B was the municipal boundary line. In support of its claim, Ruston provided the metes and bounds description contained in the Ruston Order of Incorporation, a 1903 Board of State Land Commissioners notice stating that the property was not within Tacoma's boundaries, and a 1911 Tacoma ordinance that suggests a boundary line perpendicular to the shoreline (Line B).

Tacoma answered, contending that the 1890 charter was controlling and that Line A, running due north, formed the boundary. It then moved to dismiss. Ruston cross-motioned for summary judgment. The trial court denied Tacoma's motion and ruled in favor of Ruston, concluding that the "action of Pierce County, to whom jurisdiction was given for creating the boundaries by the state legislature, in fact changed that line [Line A as set forth in the charters incorporating the City of Tacoma]."

On appeal, Tacoma argues that (1) Ruston failed to join necessary parties; (2) the trial court lacked jurisdiction to redraw municipal boundaries; (3) the trial court erred as a matter of law when it concluded that Line B was the boundary between the two municipalities; and (4) in the alternative, Ruston forfeited any claim to the contested territory through acquiescence.

## ANALYSIS

### I. NECESSARY PARTIES

Tacoma first argues that Ruston failed to join necessary parties and, therefore, the trial court did not have jurisdiction. Specifically, Tacoma argues that the current lessee of the land, the Department of Natural Resources (DNR), and the land's former owner, ASARCO, should have been joined. Tacoma also argues that the residents of Tacoma and Ruston have a vested interest in the outcome of the proceedings.

■■ RCW 7.24.110 requires a party seeking a declara-

tory judgment to join "all persons . . . who have or claim any interest which would be affected" as parties to the litigation. Without the joining of necessary parties, the trial court may not have jurisdiction to act. *Henry v. Town of Oakville*, 30 Wn. App. 240, 243, 633 P.2d 892 (1981).

> When a complete determination of a controversy cannot be had without the presence of other parties, a mandatory duty is imposed upon the court to bring them in. If a complete determination can be had without the presence of other parties, then the right to bring them in is addressed to the sound discretion of the court.

*Williams v. Poulsbo Rural Tel. Ass'n*, 87 Wn.2d 636, 644, 555 P.2d 1173 (1976) (quoting *State ex rel. Continental Cas. Co. v. Superior Court*, 33 Wn.2d 839, 842, 207 P.2d 707 (1949)), *overruled on other grounds, Chemical Bank v. Washington Pub. Power Supply Sys.*, 102 Wn.2d 874, 888, 691 P.2d 524 (1984).

The joinder of additional parties was not necessary to completely resolve this controversy. Tacoma's contention that it was necessary to join the people of Ruston and Tacoma is unpersuasive as both municipalities represent the interests of their citizens and were already parties.

Nor is there any evidence that the absence of ASARCO or the DNR would prevent the court from rendering complete relief. Although the legal relationships between these two entities and the municipalities might change as a result of this action, such changes are speculative and secondary to the issue at hand.

## II. JURISDICTION

Tacoma also argues that the trial court exceeded its authority when it declared that Line B was the official boundary. It contends that the court realigned the municipal boundaries and that the power to do so belongs to the Legislature, not to the courts. *See Port of Tacoma v. Parosa*, 52 Wn.2d 181, 184, 324 P.2d 438 (1958) ("the power of a state legislature over the boundaries of the municipalities of the state is absolute").

■ ■ RCW 45.64.010 authorizes municipalities to resolve their differences in superior court. A declaratory judgment is an appropriate means of resolving disputes arising from conflicting legislative acts. *See* RCW 7.24.020, .110. The City Charter and Ruston's Order of Incorporation are both legislative acts; the former enacted by the Legislature, the latter by the Pierce County Board of County Commissioners under authority delegated to it by the Legislature. Although the trial court does not have authority to alter the municipal boundaries, it does have the power to resolve conflicts between legislative acts that create such boundaries. That is what the trial court did here. It did not exceed its authority.

### III. THE BOUNDARY DISPUTE

Generally municipal boundaries are those set forth at the time of the creation of the municipality. RCW 45.08.090. But Ruston, pointing to the absence of a reference to tidelands in the list of sections included within the city limits, contends that the boundary set forth in Tacoma's Charter is ambiguous. It argues that the trial court properly resolved this ambiguity by considering subsequent actions of the Legislature, the County Commissioners, and the Tacoma City Council.

Tacoma argues that the 1890 charter unambiguously describes Line A as the boundary and, thus, there is no need to look beyond that document. Further, it argues that the description of Ruston's Order of Incorporation is internally inconsistent because its metes and bounds description contains a northeasterly call, which includes tidelands belonging to Tacoma, while an earlier section expressly excludes Tacoma's tidelands from the town limits.

■ ■ We review the language in a legislatively enacted document de novo as a question of law. *Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 627, 869 P.2d 1034 (1994). In doing so, we look to the plain language of the document and attempt to give effect

to the legislative intent. *W.R.P. Lake Union Ltd. Partnership v. Exterior Servs., Inc.*, 85 Wn. App. 744, 749, 934 P.2d 722 (1997). Whether a particular statute applies to a particular factual situation is a conclusion of law, not a finding of fact. *Keyes v. Bollinger*, 31 Wn. App. 286, 289, 640 P.2d 1077 (1982).

Tacoma's 1890 charter, which precedes Ruston's incorporation by 16 years, creates a boundary line running due north from the western shoreline of Commencement Bay to the Pierce-King County boundary in Puget Sound. We find unpersuasive Ruston's claim that the language in the Charter describing the sections contained within Tacoma's city limits conflicts with the preceding metes and bounds description and creates an ambiguity.

■ The sections description, printed in bold at the beginning of this decision as part of the description of Tacoma's city limits, begins with the word "including." Generally, the statutory use of "including" does not exclude entities that are not specifically enumerated thereafter. *In re Arbitration of Fortin*, 82 Wn. App. 74, 84 n.4, 914 P.2d 1209 (1996) (citing 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION, *Intrinsic Aids* § 47.23 (5th ed. 1992)). Thus, the absence of a specific reference to the tidelands in the listing of sections contained within the city limits does not indicate an intent to exclude them from the city limits. Nor does this latter portion of the city limits description conflict with the preceding metes and bounds description, which specifically includes the tidelands. The boundary description in the City Charter is not ambiguous.

■ ■ Although the City Charter is internally consistent, its due north boundary line appears to conflict with the northeast boundary in Ruston's Order of Incorporation. This conflict is resolved by the rule that the municipality first acquiring jurisdiction over the territory prevails. *Village of Elberta v. City of Frankfort*, 347 Mich. 173, 185, 79 N.W.2d 616 (1956); *see City of Jeffersontown v. City of Hurstbourne*, 684 S.W.2d 23, 24 (Ky. Ct. App. 1984) ("where two or more bodies politic have concurrent jurisdiction

over the same area, the one first acquiring jurisdiction should prevail"); *cf. In re Northwest Pasco Annexation*, 100 Wn.2d 864, 868, 676 P.2d 425 (1984) (perfection of annexation petition "prevents consideration of any petition subsequently filed if it concerns all or part of the same property"). Here, the Legislature adopted the 1890 City Charter 16 years before the County Commissioners issued the order incorporating Ruston.[1] Further, the County Commissioners specifically excluded Tacoma's tidelands in their order incorporating Ruston. But even if the County Commissioners intended to include the disputed property within Ruston's boundaries, Tacoma prevails because it was the first to incorporate the disputed triangle.

■■■ In the alternative, Ruston contends that the County Commissioners had the authority to "make such changes in the proposed boundaries [of a new municipality] as they may find to be proper." LAWS OF 1889-90, ch. VII, § 2, p. 131-32. Ruston's selective reading of this statute, however, ignores the first section, which unambiguously states that the County Commissioners' power to incorporate municipalities extended only to "portion[s] of a county . . . *not* incorporated as . . . municipal corporations." LAWS OF 1889-90, ch. VII, § 1, p. 131 (emphasis added). Although the Legislature created a mechanism whereby a municipality could unincorporate territory, *see* LAWS OF 1895, ch. XCIII, § 1, at 183-84, the record contains no evidence that Tacoma unincorporated the disputed triangle before Ruston's incorporation.

Finally, although the trial court rejected Ruston's argu-

---

[1]The Pierce County Board of County Commissioners incorporated the area now known as "Old Town" as the City of Tacoma in June 1871. At this time, the city limits ran along the shoreline of Commencement Bay.

That same year, the inhabitants of the area currently known as downtown Tacoma organized the City of New Tacoma. New Tacoma's city limits also ran along the shoreline of the bay.

In November 1883, the territorial Legislature passed an act consolidating the two cities into a single City of Tacoma. The Legislature also, for the first time, extended the City's boundaries to include the tidelands in Commencement Bay. Subsequently, the Legislature included this description of the city limits in its 1886 and 1890 versions of the City Charter. Revised City Charter and Ordinance of the City of Tacoma 27-31 (1905).

ment that RCW 35.21.160 changed the city and town boundaries, Ruston reasserts the statute as a basis to uphold the judgment in its favor. In 1909, the Legislature passed the following law:

> That the powers and jurisdiction of all incorporated cities of the state of Washington having their boundaries or any part of their boundaries adjacent to or fronting on the bay or bays, lake or lakes, sound or sounds, river or rivers, or other navigable waters, be and the same are hereby extended into and over said waters and over any tide lands intervening between any such boundary and any such waters to the middle of such bays, sounds, lakes, rivers or other waters, in every manner and for every purpose that such powers and jurisdiction could be exercised when such cities' limits include such waters or any part of such waters[.]

*Pacific Am. Fisheries v. Whatcom County*, 69 Wash. 291, 293, 124 P. 905 (1912) (quoting LAWS OF 1909, ch. 111, § 1, p. 392 (now codified at RCW 35.21.160)).

 The trial court responded to Ruston's argument that this legislation reconfigured all municipal boundaries as follows:

> Section 35.21.160 . . . did not change any legal boundaries of any cities or towns, in my opinion. As a matter of fact, the statute itself says that cities and towns may exercise such powers and jurisdiction if the waters were within the city or town limits. So by its own language it does not change any boundaries of any cities or towns. It further says: "The powers and jurisdictions of all incorporated cities and towns having their boundaries or any part thereof adjacent to or fronting on any bay or bays." That's how the section starts. So it recognizes the situation where the boundaries themselves do not include the water over which jurisdiction, for police powers and all of those sorts of things, is given to those cities and towns. That section does not change the boundaries between the City of Tacoma in the Town of Ruston.

We agree with the trial court's reasoning. As the trial court noted, a close reading of RCW 35.21.160 indicates a legislative intent to grant full jurisdiction to municipalities

over tidelands and certain waters, but not to modify city limits. This distinction is relevant in this case which came before the court as a declaratory judgment, not as a challenge to the City's exercise of jurisdiction over any particular piece of tideland or part of Commencement Bay.

Further, as the trial court noted, the statute deals with the situation where the City's boundary is adjacent to or fronting on the body of water, not where the City's boundaries already extend across the body of water and encompass the land on the opposite shore. In *Utilities & Transp. Comm'n v. United Cartage, Inc.*, 28 Wn. App. 90, 97, 621 P.2d 217 (1981), the court dealt with a distinguishable fact situation, but its comments about the statute are nonetheless instructive. The *United Cartage* court stated:

> A careful reading of the statute reveals that it does not anticipate the problem that arises when several cities are located along both sides of a body of water with an irregularly shaped shoreline. In such instances, a literal application would create overlapping jurisdictions. Statutes should not be read literally to reach an absurd result.

28 Wn. App. at 97.

The plain language of RCW 35.21.160 appears designed to fill gaps in jurisdiction and create certainty as to jurisdictional questions confronting cities that are divided from each other by bodies of water. If a literal reading of the statute moved Ruston's boundary line from A to B, it would create an overlapping jurisdiction, the exact contours of which might vary over time—clearly an "absurd result." Because it appears that the Legislature did not contemplate these circumstances, RCW 35.21.160's application here is inappropriate.

### IV. DOCTRINE OF ACQUIESCENCE

Tacoma contends that the disputed area has long been treated as within its jurisdiction. Consequently, it argues that the Doctrine of Acquiescence estops Ruston from asserting a different boundary.

The doctrine of acquiescence is based upon public policy and applies where

> by custom, usage and the passage of time, disputed territory has been assumed by all interested persons to be beyond the boundaries of one entity of local government and within those of another, and where property owners or adjacent units of local government have relied to their detriment upon the inaction and passivity of a municipal corporation to which knowledge of the original boundaries at the time of incorporation may be imputed.

*La Porto v. Village of Philmont*, 39 N.Y.2d 7, 11, 346 N.E.2d 503, 382 N.Y.S.2d 703 (1976). Ruston argues that the doctrine is not applicable in Washington, and that, even if it were, the evidence does not support its application.

The evidence in the record indicates a dispute between the parties as to their past positions regarding the status of the disputed property. There also is disagreement as to detrimental reliance on Line A by interested parties. Thus assuming, without deciding, applicability of the doctrine of acquiescence in this jurisdiction, a remand for further fact-finding would be necessary if this were the dispositive theory. But because, as we discussed above, Line A is the correct boundary line between Tacoma and Ruston, remand is unnecessary.

We reverse the declaratory judgment in favor of the Town of Ruston and remand for entry of judgment in favor of the City of Tacoma.

ARMSTRONG and HUNT, JJ., concur.

Review denied at 136 Wn.2d 1003 (1998).