OPINION OF THE COURT
Louis C. Benza, J.
The instant CPLR article 78 proceeding seeks a judgment directing respondent to accept and file petitioner’s fire district map in accordance with Town Law § 176 (5). Petitioner also *612 seeks judgment directing respondent to file a certified copy of the fire district map with the county clerk, to notify all adjoining fire districts in the Town of Guilderland (hereinafter Town) that the map was filed in the offices of the Town and the county clerk and to publish a notice in an official newspaper pursuant to Town Law § 176 (5). Respondent opposes the application alleging the map in question is an alteration of a previously filed and accepted map and, therefore, subject to the requirements of Town Law §§ 170 and 172-a, and not Town Law § 176 (5).
Petitioner’s fire district was established in 1950 and was extended in 1973, 1981 and 1998 (reply affirmation of Wayne L. Burton 1). The fire district is contiguous with four other fire districts located in the Town: Guilderland Center, West-mere, Fort Hunter and Midway (verified petition 5). In 1980, the County of Albany had a tax map prepared for the Town. The Town adopted this tax map and all fire district boundaries were established from this map by the Town (affirmation in opposition of William Young 5, 22). In 1998, petitioner hired a land surveyor to prepare a map pursuant to Town Law § 176 (5), and using the boundary lines established in 1950 and extended in 1973, 1981 and 1998 (affidavit of David A. Flanders). This map seeks to include tax parcels along State Farm Road (Route 155) in the subdivision known as the “Vale of Normanskill” (affidavit of Carol Wysomski; affidavit in opposition, exhibit D). By an August 2000 resolution, petitioner adopted the map prepared by Flanders. All of the adjoining fire districts were served with a copy of the map with the legal description and a notice of its intent to file said map in compliance with Town Law § 176 (5). Respondent argues that thereafter objections were made (affidavits of Robert Santorelli 21). Specifically, the Westmere fire district’s commissioner avers written objection were sent to the town supervisor on August 31, 2000 and that petitioner previously acknowledged the dispute in its letter dated August 16, 2000 (affidavit of Albert Spawn 29). Petitioner contends that it did not receive any objections within the 45-day period proscribed by Town Law § 176 (5) (verified petition fí 17). In any event, thereafter, on November 3, 2000, the petitioner filed the map and legal description with respondent. Subsequent to filing, petitioner asked respondent to delay filing or certifying the map so that it could negotiate with three of the four adjacent fire districts regarding boundary issues (verified petition |f 20). After these negotiations failed to resolve these issues, petitioner requested that respondent file and certify the map (verified petition 20).
*613 In January 2002, respondent determined that the boundaries of petitioner’s map were in conflict with the official maps of the other four fire districts (affidavit of Rosemary Centi 5). Respondent avers that when the map was compared to the resolution of the town board creating petitioner’s fire district, the description was different than the description that was originally adopted (id. 6). After discussions with the town assessor, respondent found that the map would alter fire district coverage by including 214 parcels into petitioner’s fire district (id.; affidavit of Carol Wysomski). If the map was accepted for filing, therefore, it would change for the owners of these parcels both the provider of fire protection and to whom taxes were paid. By letter dated January 17, 2002, respondent declined to accept petitioner’s map as she determined it was an alteration of a fire district map and, therefore, subject to the requirements of Town Law § 172-a (affidavit of Rosemary Centi). Petitioner thereafter commenced the instant CPLR article 78 proceeding, seeking the aforementioned relief.
Petitioner claims it does not seek to alter any fire district boundary lines. Rather, petitioner contends that its purpose was to simply prepare a map showing boundary lines as enacted and as extended by the applicable town board resolutions. Petitioner argues that Town Law § 176 (5) is the proper vehicle to achieve this goal and settle disputes over fire district boundary lines. Moreover, petitioner contends that it has complied with the statute’s requirements as it properly served all adjacent fire districts; no objections were timely filed; as such, there is no need for the Town to become involved. Accordingly, petitioner demands that respondent accept petitioner’s map for filing, file a certified map with the Albany County Clerk with notice to the contiguous fire districts and publish the acceptance with the local official newspaper of the Town.
In opposition, respondent counters, inter alia, that Town Law § 176 (5) does not apply to this situation as the boundaries for petitioner and the other fire districts have already been established and mapped in 1980 and the time for petitioner to object to these boundaries has passed. Further, respondent contends that any proposed change from the established boundaries is an alteration governed by Town Law § 172-a. Additionally, respondent argues that even if Town Law § 176 (5) is applicable, petitioner has not complied with its requirements as it refuses to participate in the process, i.e., share the cost of a survey and participate in a public hearing. Moreover, respon *614 dent contends that homeowners will be disenfranchised as their taxes will increase without the opportunity for a hearing, the right of the Town to intercede to protect their interests, and having input in determining the long-term debt imposed upon their real property.
The issue before this court is a matter of statutory interpretation of article 11 of the Town Law relating to the procedure for establishing and mapping the boundaries of a fire district. It is undisputed that town boards have the sole statutory authority to establish or extend fire districts by resolution (see, Town Law § 170), and alter boundaries (see, Town Law § 172-a). Over the past 50 years, the town board has created the five fire districts at issue here and has approved several extensions to these contiguous fire districts. To complement the town board’s authority to set the boundaries, Town Law § 176 (5) sets forth the procedure for a fire district to file a map of the boundaries of the particular district. This section provides that upon a fire district filing a map with the town clerk of every town wherein the district lies, where there are no boundary lines contiguous with other fire districts, the map shall be presumptive evidence of the district boundaries after approval by such town board(s). This provision for presumptive evidence, however, is not contained in the provision dealing with boundary lines that are contiguous with an adjacent fire district.
Where a map is filed and there are boundary lines contiguous with adjacent fire districts, as here, the submitting fire district must submit proof that the map and description were served on the adjacent fire districts and that 45 days have elapsed since said service. If an adjacent fire district objects, it must file its objections with the fire district proposing the map and the town clerk of every town in which the fire district is located. If an objection is made, and denied, the town board shall direct a survey of the disputed boundary and notify the affected fire districts of the results of the survey. Thereafter, the town shall conduct a public hearing for real property owners to be heard regarding the disputed line. Following these procedural steps, the town board shall determine the disputed line, and the map, as approved by the town board, shall be filed and become presumptive evidence of the boundaries of the fire district.
The court notes, however, that there is no direction in the statute for the circumstance in which no objections are received from adjacent fire districts. Absent any direct language, the court reads the subdivision as a whole to obtain direction. Af *615 ter reviewing the language requiring the town board to approve the map even where there are no boundary lines contiguous with other districts, the court determines that this same requirement must apply when no objections are raised by other fire districts. That is, the town board must still approve the map.
To do otherwise and adopt the position of petitioner would effectively tie the hands of the town board if no objections were filed and, thus, render the map as filed presumptive evidence of the boundaries. In making this determination the court is mindful that in 1980 Town Law § 176 (5) was extensively overhauled and the legislative history reveals that the main purpose in amending the statute was to provide a mechanism for the settlement of boundary disputes between fire districts (Mem of Assemblyperson Gorski, Bill Jacket, L 1980, ch 358). In analyzing this section, however, the court must read it together with sections 170 and 172-a, and all the remaining sections, to give full force to article 11. While the court recognizes the Legislature’s aim in providing a procedure for filing a map to give a face to the mechanical description of the boundary lines and settle disputes, the court does not interpret this mechanism as a repeal, directly or by implication, to the other sections of article 11, and as a means for fire districts to usurp the power of a town board to ultimately determine what a district’s boundaries are. In the court’s view, this position is only strengthened by the subdivision’s placement amongst other administrative duties of a fire commissioner, and not in the sections dealing with extending or altering boundary lines (see, Town Law §§ 170, 172-a). As such, the court determines that Town Law § 176 (5) is applicable to this action.
Given its application, the record reflects that written objections were not filed by the adjacent fire districts with petitioner and the Town Clerk as set forth in Town Law § 176 (5). As previously discussed, however, the town board still retains the duty of approving the map. In making its determination, the court notes that the town board is guided by the remaining sections of article 11 and, to the extent it is applicable, by the doctrine of acquiescence.*
*616 In view of the foregoing, this matter is remitted to respondent to put on the agenda of the town board for determination in a manner consistent with this judgment.

 “[W]here, by custom, usage and the passage of time, disputed territory has been assumed by all interested persons to be beyond the boundaries of one entity of local government and within those of another, and where propertyowners or adjacent units of local government have relied to their detrimentupon inaction and passivity of a municipal corporation to which knowl *616 edge of the original boundaries at the time of incorporation may be imputed * ** * [t]he doctrine of acquiescence [was applicable] * * * ” (La Porto v Village of Philmont, 39 NY2d 7, 11).