OPINION OF THE COURT
Diana A. Johnson, S.
Petitioner Hua Wang, also known as Judy Wang, moves for summary judgment on her entitlement to take an elective share of the decedent’s estate pursuant to EPTL 5-1.1-A.
In opposition, respondents Joel Berk and Harvey Berk, the coexecutors of the estate, argue the motion is premature as no discovery has been conducted, and there are material and triable issues of fact raised by their counterclaims and defenses.
Petitioner filed a petition seeking a decree determining that she is entitled to take her elective share against the estate, and that her notice of election was properly served, filed and recorded as provided by law.
Respondents filed a verified answer alleging various affirmative defenses[1] and counterclaims seeking to: (1) have the alleged marriage between the decedent and petitioner deemed null and void ab initio, and to annul the marriage nunc pro tunc; (2) dismiss the petition in its entirety; (3) vacate petitioner’s notice of election dated October 26, 2006; and (4) award the estate damages for the costs of this proceeding. Alternatively, if petitioner is not disqualified as a surviving spouse, they seek an award of compensatory damages equal to the elective share, plus interest and costs of the proceeding for the loss to the estate resulting from petitioner’s fraudulent conduct. The decedent, Irving Berk, died on June 16, 2006, survived by two sons, the coexecutors herein, and four grandchildren from a prior marriage. Petitioner served as the decedent’s caretaker during the last decade of his life. The decedent’s will dated July 10, 1982, was admitted to probate on October 30, 2006. Letters testamentary were issued *693 to the nominated coexecutors on that date. The decedent’s children and grandchildren were the sole beneficiaries under the will. The record reflects that a notice of election dated October 26, 2006 was timely filed by petitioner, and was properly served upon the coexecutors.
Summary judgment is designed to eliminate from the trial calendar litigation that can be resolved as a matter of law (Andre v Pomeroy, 35 NY2d 361 [1974]). The court’s burden is not to resolve issues of fact, but merely to determine if such issues exist (Dyckman v Barrett, 187 AD2d 553 [2d Dept 1992]). It is a drastic remedy that will only be granted where there is no triable issue of fact (Barclay v Denckla, 182 AD2d 658 [2d Dept 1992]). The court, therefore, must construe the facts in a light most favorable to the nonmoving party so as not to deprive that person of their day in court (Russell v A. Barton Hepburn Hosp., 154 AD2d 796 [3d Dept 1989]).
The party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (Zarr v Riccio, 180 AD2d 734 [2d Dept 1992]). Failure to make out a prima facie case requires denial of the motion regardless of the sufficiency of the opposing papers (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]). If however a prima facie case is made, the burden of going forward shifts to the opposing party to establish the existence of material issues of fact requiring a trial (Romano v St. Vincent’s Med. Ctr. of Richmond, 178 AD2d 467 [2d Dept 1991]) by tendering evidentiary proof in admissible form (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979]).
*694 Petitioner in her affidavit in support of the motion states that she married decedent on June 17, 2005, and remained married to the decedent until the time of his death, annexing as exhibit A, a “Certificate of Marriage Registration” which was filed with the City Clerk’s Office of the City of New York.
*693 Estates, Powers and Trusts Law § 5-1.1-A allows a surviving spouse a personal right of election to take a share of a decedent’s estate when the parties are in fact married on the date of the decedent’s death. This statute provides that a husband or wife is a surviving spouse within the meaning of EPTL 5-1.1-A, unless it can be established satisfactorily to the court that any of the grounds for disqualification contained in EPTL 5-1.2 exist.[2] The status of a person as a surviving spouse is a condition pre *694 cedent to the exercise of the right of election. Thus, one claiming the right to take against a will must first establish that he or she is the lawful spouse of the decedent.
Petitioner having shown that she and the decedent were married on June 17, 2005, and remained married at the time of his death has made out her prima facie case. The burden now shifts to respondents to establish a material issue of fact precluding the grant of summary judgment to petitioner on her right to take an elective share of the estate.
Respondents argue that this motion is premature as no discovery has been conducted as grounds exist for a postdeath annulment of the marriage. In support thereof respondents proffer a voluminous submission of documents and affidavits to demonstrate to the court that the decedent did not have the mental capacity to understand the nature, effect and consequences of the marriage or to enter into a marriage contract. They also allege that the evidence suggests that the decedent’s consent to the marriage arose from force, duress or fraud. Respondents posit that under New York law marriages are voidable, even postdeath, for any one of a number of reasons, among them that a party was, “incapable of consenting to a marriage for want of understanding,” or was “incapable of entering into the marriage state from physical cause,” or that a party gave, “consent to the marriage by reason of force, duress or fraud.”
An annulment may be granted if one of the parties was incapable of consenting to the marriage for want of understanding or comprehending the significance of the decision to marry (Levine v Dumbra, 198 AD2d 477 [2d Dept 1993]). A postdeath action for annulment may be maintained provided the person(s) seeking same establishes an interest to void the marriage (Tabak v Garay, 237 AD2d 510 [2d Dept 1997]). However the granting of a postdeath annulment herein would not defeat petitioner’s right of election as a surviving spouse as petitioner’s right to *695 elect against the estate became fixed and unalterable upon Irving Berk’s death (Bennett v Thomas, 38 AD2d 682 [4th Dept 1971]; see also Parente v Wenger, 119 Misc 2d 758 [Sup Ct, NY County 1983]; Estate of Dominguez, 2002 NY Slip Op 50481[U] [Sur Ct, Bronx County 2002]).
As a surviving spouse’s right to elect against a will is not disturbed even if the marriage is annulled postdeath, any claim that this motion is premature as required discovery has yet to be conducted is of no moment and does not impact on this motion seeking a determination of petitioner’s right to take her elective share under EPTL 5-1.1-A. The only grounds to disqualify a surviving spouse are those contained, as indicated earlier, in EPTL 5-1.2, none of which are alleged herein.
Respondents’ argument that if the marriage is annulled it will be voided nunc pro tunc and be void from inception, negating the need to demonstrate one of the grounds for disqualification contained in EPTL 5-1.2 as no valid marriage existed in the first place, is misplaced. Pursuant to Domestic Relations Law § 7 a marriage is voidable, not void, if one of the parties thereto was incapable of consenting to the marriage for want of understanding, or consented to same by reason of force, duress, or fraud. A voidable marriage is only void from the time its nullity is declared by a court.
Alternatively respondents argue that if the marriage cannot be voided petitioner should be “equitably estopped” from claiming that she is the decedent’s spouse, since as his caretaker she stood in a “fiduciary” relationship with the decedent and the Berk family. By keeping silent about the marriage, petitioner abused the trust accorded her by the Berks to their detriment. Therefore, respondents argue, petitioner’s misrepresentations about her marital status, or her failure to disclose her marital status in the face of an alleged duty to do so creates both legal and factual issues warranting denial of the motion.
The court finds respondents’ argument unavailing as there is no legal authority for, nor have respondents cited any for, the proposition that petitioner had a legal duty to inform anyone concerning her marital status, and that failing to do so she is estopped from claiming to be decedent’s spouse. The case posited by respondents, Estate of Mattox (2001 NY Slip Op 40130[U] [Sur Ct, Bronx County 2001]), which respondents allege “provides the court with clear authority to apply the doctrine of estoppel to deny Wang’s motion,” bears no factual similarity to the present proceeding. In that case, summary judgment was *696 denied to the decedent’s first wife seeking the surviving spouse’s intestate share where the second wife alleged she married decedent in reliance on the false oral representation of the first wife that she had divorced the decedent. In denying the motion the court concluded that such findings of fact might result in the determination that the equitable defense of estoppel would bar the first wife from claiming a surviving spouse’s intestate share.
Finally, respondents argue that the motion should be denied based on petitioner waiving her right to elect against decedent’s will. They draw the court’s attention to a “handwritten note” written, signed and produced by petitioner which states in pertinent part, “I like the people knows that this marriage is not for money. I’ll not take any money from Berk’s family.”
While acknowledging that this handwritten note does not meet the statutory requirements of EPTL 2-1.11, respondents’ argue that it should be treated as a common-law renunciation wherein petitioner renounced her rights to any interest she may have had in the decedent’s estate and in so doing waived her right to elect against the decedent’s will.
While it may be correct that EPTL 2-1.11 does not abridge the right of any person to renounce any interest or property under common law (EPTL 2-1.11 [h]; Matter of Stephens, 177 Misc 2d 469 [Sur Ct, Erie County 1998]), under common law one could only renounce testamentary dispositions (Matter of Fienga, 75 Misc 2d 233 [Sur Ct, Kings County 1973]). The right of election by a surviving spouse is not a testamentary disposition; quite the opposite its purpose is to prohibit a decedent from disinheriting a surviving spouse.
For petitioner to have waived her right of election, something altogether different than a renunciation, there must be compliance with EPTL 5-1.1-A (e) (2), which provides that “a waiver or release must be in writing and subscribed by the maker thereof, and acknowledged or proved in the manner required by the laws of this state for the recording of a conveyance of real property.” The writing herein contains neither a certificate of acknowledgment nor the signature of any subscribing witness rendering it ineffective to waive the surviving spouse’s right of election (see Estate of Bono, NYLJ, Feb. 13, 1998, at 34, col 5 [Sur Ct, Nassau County], citing Pacchiana v Pacchiana, 94 AD2d 721 [2d Dept 1983]). The purported waiver of the right of election provided by EPTL 5-1.1-A is to be strictly and narrowly construed. A surviving spouse will not be deemed to have waived *697 such important statutory rights unless done so in the most unambiguous and unquestionable language CMatter of LeRoy, 118 Misc 2d 382 [Sur Ct, Onondaga County 1983]). The “handwritten note” herein fails to comply with any of the strict statutory requirements to be an effective waiver of the spousal right of election.
In conclusion respondents argue that to give this “sham” marriage any validity would be to endorse petitioner’s actions and create a rule that will allow future caretakers of the elderly an easy road to gain unlawful inheritance rights.
In this estate valued in excess of five million dollars, the court is cognizant of petitioner’s former status as caretaker of the decedent who was 99 years of age, while petitioner was 47 years of age when they married; that petitioner did not disclose that she had married Irving Berk until after he died; and that there are issues concerning his capacity to have entered into the marriage. However, whether Irving Berk lacked capacity or his consent was procured by force, fraud or duress, it does not disqualify petitioner from taking her elective share. While this may appear incongruous and seemingly invites a plethora of surreptitious “deathbed marriages” as a means of obtaining one third of a decedent’s estate immune from challenge, this is simply the state of the law. It is not for this court to write disqualifications into EPTL 5-1.2 or alter Domestic Relations Law § 7, which makes a voidable marriage void from the time its nullity is declared, rather than from the time of the marriage.
Based on the foregoing, it is the finding of this court that there are no issues of fact concerning petitioner’s status as the decedent’s lawful spouse on his date of death or her entitlement to exercise the right of election pursuant to EPTL 5-1.1-A.
Petitioner’s motion for summary judgment is granted. Without passing on the merits thereof, respondents’ counterclaims sounding in annulment and for an award of compensatory damages based on petitioner’s alleged fraudulent conduct are dismissed without prejudice.

. (a) The decedent lacked the mental capacity to understand the nature, effect and consequences of the marriage or to enter into a marriage contract; (b) the petitioner procured the marriage through fraud, deception, coercion and undue influence practiced on the decedent; (c) the petitioner was originally hired as a caregiver for the decedent, and stood in a fiduciary relationship with the decedent’s family and had an obligation to disclose her marriage to the decedent’s family; and (d) in a handwritten note Wang renounced her interest in the decedent’s estate.

. (1) A final decree or judgment of divorce, annulment, declaration of nullity or dissolution of marriage recognized as valid under New York law was in effect when the deceased spouse died; (2) the marriage was incestuous or bigamous; (3) the spouse obtained outside of New York a final decree or judgment of divorce, annulment, declaration of nullity or dissolution of marriage from the deceased spouse not recognized as valid under New York law; (4) a *694 final decree or judgment of separation recognized as valid in New York was rendered against the spouse and was in effect at the decedent’s death; (5) the spouse abandoned the deceased spouse until the time of death; and (6) the spouse having the duty and means to support the deceased spouse, failed or refused to do so, unless resumed and continued until death of spouse.