[888 NYS2d 385]

# In the Matter of the Estate of Richard Kaminester, Deceased.

Surrogate's Court, New York County, October 14, 2009

APPEARANCES OF COUNSEL

*Novick & Associates, P.C.*, Huntington (*Donald Novick* of counsel), for petitioner. *Friedman, Harfenist, Kraut & Perlstein LLP*, Lake Success (*Steven J. Harfenist* of counsel), for respondent.

### OPINION OF THE COURT

KRISTIN BOOTH GLEN, S.

Kimberly Kaminester, executor of the will of her father Richard I. Kaminester, seeks a determination of the validity of the spousal right of election exercised by Inalee Foldes (*see* SCPA 1421; EPTL 5-1.1-A). Foldes married the physically and mentally ailing decedent on March 1, 2006, $2^{1}/_{2}$ months after a Texas court had appointed a temporary guardian for him, during the pendency of a New York proceeding under article 81 of the Mental Hygiene Law in which a temporary guardian of the person and property was appointed for him, and $2^{1}/_{2}$ months before he died.

Petitioner, invoking doctrines of constructive fraud and equitable estoppel, asks the court to disqualify Foldes as a surviving spouse (*see* EPTL 5-1.2). In addition, petitioner relies on a posthumous decision in which the article 81 court, inter alia, declared decedent's marriage to Foldes void because of decedent's incapacity to marry (*Matter of Kaminester*, 17 Misc 3d 1117[A], 2007 NY Slip Op 52043[U] [Sup Ct, NY County 2007], *mod sub nom. Matter of Kaminester v Foldes*, 51 AD3d 528 [1st Dept 2008], *lv dismissed and denied* 11 NY3d 781 [2008]).

Foldes answers that none of the bases for disqualifying a surviving spouse under EPTL 5-1.2 is apposite, that her right to elect against decedent's will became "fixed and unalterable" upon decedent's death (*see e.g. Bennett v Thomas*, 38 AD2d 682, 683 [4th Dept 1971]; *Matter of Wang*, 20 Misc 3d 691, 695

[Sur Ct, Kings County 2008]), and therefore cannot be defeated by a posthumous annulment (*see* EPTL 5-1.2 [a] [1]).

On the return date of the citation, the parties agreed to treat Foldes' answer as a motion to dismiss the petition for failure to state a cause of action; an extensive briefing schedule was set. The matter is now submitted for decision.

The complexity of the facts and the law of this case demands a chronology of events. In December 2005, Kimberly Kaminester commenced a proceeding in the New York County Supreme Court to have an article 81 guardian appointed for her father. The proceeding was brought on by order to show cause dated December 15, 2005. The order to show cause contained a temporary restraining order. It enjoined Foldes from: (1) accepting "any funds or financial benefit from RICHARD KAMINESTER until the hearing and determination of this application"; (2) removing him from the State of New York; (3) "interfering with his receipt of home health care"; (4) "going within 100 yards of RICHARD KAMINESTER when he is outside of his residence"; and (5) denying Kimberly Kaminester or her brother access to their father, "either by locking them out or any other method." A hearing for interim relief was scheduled for December 19, 2005, but was rescheduled to January 2006; before the order to show cause was served, Foldes had taken decedent to Texas. Kimberly Kaminester followed.

On December 16, 2005, the probate court of Harris County, Texas, found "probable cause by clear and convincing evidence" that "an imminent danger to the person of Richard Kaminester exists because he is totally incapacitated and cannot make informed decisions about her [*sic*] person or estate." The court appointed Kimberly Kaminester temporary guardian of decedent's person.

On January 27, 2006, the New York County Supreme Court found, "by clear and convincing evidence," that decedent "requires the appointment of a guardian of the person and property" (index No. 500160/05). The court adjourned the hearing "for further consideration of the powers of the guardian so that the Order can provide for the least restrictive form of intervention after recognizing that Mr. Kaminester has cognitive deficits." The January 27, 2006 decision, however, lacks an explicit finding of decedent's incapacity.

On February 10, 2006, the beneficiary designation of decedent's $1.6 million life insurance policy was changed from his two children to Foldes. According to the article 81 court, "Ms.

Foldes personally delivered the policy change form to . . . the servicing agent for the life insurance policy" (*Matter of Kaminester*, 17 Misc 3d 1117[A], 2007 NY Slip Op 52043[U], *4, *supra*).

On March 1, 2006, Foldes married decedent. Foldes concealed the marriage from decedent's children, from the court evaluator, from counsel appointed for decedent (in the December 15, 2005 order to show cause), and from the court.[1]

On March 28, 2006, title to decedent's $2 million home in Westhampton was changed from decedent's name to his name and Foldes' name, as joint tenants with right of survivorship.

At an April 3, 2006 "hearing" (no witness actually testified) in New York County Supreme Court, Ira Salzman, Esq., represented petitioner Kimberly Kaminester, Brett Nussbaum, Esq., represented decedent, and Martha J. Brosius, Esq., represented Foldes.[2] A stipulation was placed on the record that decedent lacked capacity to marry. The stipulation was consistent with the recommendation of Joan Serrano Laufer, ACSW, the court evaluator, in her January 22, 2006 report, that "RICHARD KAMINESTER should not have the right to enter into contracts including but not limited to contracts to marry or a cohabitation contract." The stipulation also was consistent with the opinion of Mark E. Kunik, M.D., MPH, the psychiatrist who examined decedent in connection with the Texas proceeding, and who certified that decedent "is incapable of making a decision . . . to contract and incur obligations." The transcript, although murky, reflects the Judge's apparent intent to issue an order declaring decedent's incapacity to marry, on the consent of Christopher Robert Dennis, M.D., the psychiatrist who evaluated decedent at the direction of the article 81 court:[3]

> "MR. SALZMAN: . . . And counsel have also agreed that the court should today, after hearing the testimony of Dr. Dennis, should it deem appropriate to do so, counsel would consent to the issuance of

1. Indeed, they remained ignorant of decedent's marriage until his death, 2¹/₂ months later. (*See Matter of Kaminester*, 17 Misc 3d 1117[A], 2007 NY Slip Op 52043[U], *6, *supra*.)

2. Amelie Kraus, Esq., Foldes' "personal attorney," also was present. (*See Matter of Kaminester*, 17 Misc 3d 1117[A], 2007 NY Slip Op 52043[U], *4, *supra*.)

3. The March 14, 2006 report of Christopher Robert Dennis, M.D., provides: decedent "lacks capacity to make decisions regarding his medical and financial affairs," and his "personal interests would be best served by the appointment of a guardian to administer to both his financial and medical affairs."

an order determining that Richard Kaminester does not have the capacity to marry.

"THE COURT: Capacity to what?

"MR. SALZMAN: To marry.

"THE COURT: Okay. And also not to manage his own finances, correct?

"MR. SALZMAN: That's correct, or personal affairs.

"THE COURT: Or to issue any health care proxies or whatever.

"MR. SALZMAN: That's correct.

"THE COURT: So what do you want me to do?

"MR. SALZMAN: We would, I guess, call Dr. Dennis briefly.

"MR. NUSSBAUM: Well, I don't know if that's necessary, Judge.

"THE COURT: If he is consenting, it doesn't serve any purpose.

"MR. SALZMAN: Okay." (Tr at 4.)

"MR. SALZMAN: . . . So we'd ask the Court issue [*sic*] a short form order simply determining that Mr. Kaminester does not have the capacity to marry, and then we would submit proposed order appointing the temporary guardian for the Court's immediate review.

"THE COURT: Do you have a copy of it now?

"MR. SALZMAN: We have it right here.

"THE COURT: You both agree to it?

"MR. SALZMAN: That's correct.

"MR. NUSSBAUM: Yes." (Tr at 5.)

"MR. SALZMAN: May I hand up an order? May I hand up proposed [*sic*] order?

"THE COURT: You have the order?

"MR. SALZMAN: Yes, right here.

"THE COURT: Okay.

"MR. SALZMAN: Thank you very much, your Honor.

"So the Court will be issuing a short form order with regard to the marriage issue and I guess instructing me to settle an order appointing permanent [*sic*] guardian; is that correct? Yes.

"MS. BROSIUS: Thank you.

"MR. NUSSBAUM: Thank you. (Whereupon, the matter concluded.)" (Tr at 12.)

Curiously, there is no evidence an order declaring decedent's incapacity to marry was presented to the judge or issued.

Also at the April 3, 2006 hearing, the report of the evaluating psychiatrist was admitted into evidence, with one modification: it was amended to indicate decedent currently resided with his "girlfriend,"[4] "girlfriend" being a reference to Foldes.[5]

Neither Brosius, Foldes' counsel, nor Foldes, who was in the courtroom during the April 3, 2006 hearing, revealed to the court, the court evaluator, counsel for decedent, or counsel for petitioner, the existence of her March 1, 2006 marriage to decedent. Foldes contends Brosius attended the hearing only for the purpose of adducing witnesses on the issue of whether Foldes should be permitted to continue to reside in decedent's apartment, and therefore was not a party to the stipulation. Foldes claims she remained silent during the hearing because, as she later testified: "No one asked me" (*Matter of Kaminester*, 17 Misc 3d 1117[A], 2007 NY Slip Op 52043[U], *6 [2007], *supra*). Nevertheless, according to the article 81 court:

> "The stipulation was entered into at the counsel table and all three attorneys were present when it was placed on the record. *The argument advanced that Ms. Brosius was not a participant to the stipulation is incorrect* as the minutes indicate. The stipulation provided that Mr. Kaminester did not have the capacity to marry. No objection was raised by Ms. Brosius. This stipulation, together with the undisputed medical evidence, clearly established that at the time of the marriage ceremony Mr. Kaminester did not have the capacity to marry or enter into contractual obligations." (*Matter of Kaminester*, 17 Misc 3d 1117[A], 2007 NY Slip Op 52043[U], *11 [2007], *supra* [emphasis added].)

On April 11, 2006, an order appointing Fern Finkel, Esq., temporary guardian of decedent's person and property was signed.

---

4. The report provides: "Lived with GF until recently."

5. See transcript at 5:

"MR. NUSSBAUM: The only issue that I had with the content of Dr. Dennis' report was the fact that it stated that he does not reside currently with his girl friend [*sic*]. He does.

"MR. SALZMAN: We all agree that that is factually correct, and that was based on historical data, so that's—

"THE COURT: Okay.

"MR. NUSSBAUM: So I would just like the record to reflect that Dr. Dennis' report be amended to reflect that."

On May 15, 2006, decedent died. At the time of his death, his marriage to Foldes remained concealed (*Matter of Kaminester*, 17 Misc 3d 1117[A], 2007 NY Slip Op 52043[U], *9 [2007], *supra*).

On May 25, 2006, letters testamentary issued to Kimberly Kaminester.

On June 5, 2006, Foldes filed a notice of the exercise of her right of election.

By order to show cause dated September 7, 2006, Kimberly Kaminester, as executor, sought an order from the article 81 court holding Foldes in civil and criminal contempt for violating the December 15, 2005 temporary restraining order. In her accompanying affidavit, sworn to August 28, 2006, she asked the court to hold Foldes in contempt "for marrying my father, RICHARD KAMINESTER, in violation of this Court's Order to Show Cause of December 15, 2005."[6]

In an October 19, 2007 decision, the article 81 court determined decedent lacked the capacity to marry or enter into the financial transactions at issue. Invoking Mental Hygiene Law § 81.29 (d), the court "revoked and voided" decedent's marriage to Foldes, the designation of Foldes as beneficiary of decedent's life insurance policy, and the deed by which Foldes became a joint tenant of decedent's Westhampton real property (*Matter of Kaminester*, 17 Misc 3d 1117[A], 2007 NY Slip Op 52043[U], *15 [2007], *supra*). In addition, the court found Foldes in civil and criminal contempt of the December 15, 2005 temporary restraining order (*Matter of Kaminester*, 17 Misc 3d 1117[A], 2007 NY Slip Op 52043[U], *13, *14 [2007], *supra*).

The Appellate Division, First Department, modified the decision, on the law and the facts, vacating the findings of civil and criminal contempt and remanding the contempt issue for a new hearing,[7] but otherwise affirmed the decision of the article 81 court (*Matter of Kaminester v Foldes*, 51 AD3d 528 [2008],

---

**6.** By prior orders to show cause with temporary restraining orders, dated May 8, 2006 and May 18, 2006, Kimberly Kaminester sought an order voiding the designation of Foldes as a beneficiary of decedent's life insurance policy and voiding the deed by which decedent's interest in certain real property in Westhampton was conveyed to him and to Foldes, as joint tenants with right of survivorship.

**7.** The court ruled:

> "The matter is necessarily remanded for a determination of the scope of the order as well as her knowing violations of the order—the change in life insurance beneficiary, conveyance of the Westhampton property, and her marriage to the AIP after he was

*supra).* The Appellate Division expressly affirmed the lower court's: (1) maintaining jurisdiction over the matter after decedent's death; (2) finding decedent lacked capacity to enter into the marriage or to engage in the financial transactions at issue; and (3) invocation of Mental Hygiene Law § 81.29 (d) to revoke the marriage and financial transactions.[8]

A motion to the Court of Appeals for leave to appeal was dismissed to the extent it related to the order for a remanded hearing on contempt, and otherwise denied (*Kaminester v Foldes*, 11 NY3d 781 [2008], *supra*). Thus, the Court of Appeals left intact the Appellate Division's affirmance.

Two interesting interpretations of Mental Hygiene Law § 81.29 (d) inform the instant determination: (1) a disparity between Mental Hygiene Law § 81.29 (d) and Domestic Relations Law § 7 (2), which apparently permits an article 81 court to revoke the marriage of an incapacitated person; and (2) the authority of an article 81 court to do so posthumously.

Domestic Relations Law § 7 (2) characterizes a marriage involving a person "incapable of consenting to a marriage for want of understanding" as voidable. Such marriage becomes a nullity as of the date it is annulled (Domestic Relations Law § 7). Mental Hygiene Law § 81.29 (d), by contrast, permits the court that appoints an article 81 guardian for an incapacitated person to "revoke any previously executed . . . contract . . . made by the incapacitated person prior to the appointment of the guardian if the court finds that the previously executed . . . contract . . . was made while the person was incapacitated." By judicial construction, "contract," within the context of Mental Hygiene Law § 81.29 (d), has been held to include marriage (*Matter of Dot E.W.*, 172 Misc 2d 684, 693 [Sup Ct, Suffolk County 1997] ["(M)arriage constitutes a contract within the meaning of Mental Hygiene Law § 81.29 (d). As such, it is subject to revocation by the court"]). The statute has been further construed to permit a court appointing an article 81 guardian either to revoke *or* to annul a marriage of the incapacitated person (*id.* at 694 ["The court further finds that Mental Hygiene

determined to be incapacitated—in addition to her conduct subsequent to those alleged violations, including failing to disclose these transactions at a court hearing where the parties stipulated to the AIP's incapacity." (*Matter of Kaminester v Foldes*, 51 AD3d 528, 530 [2008], *supra.*)

8. The Appellate Division noted: "Annulment of marriage is also an available remedy in an article 81 proceeding." (*Matter of Kaminester v Foldes*, 51 AD3d 528, 529 [2008], *supra* [citations omitted].)

Law § 81.29 (d) confers a statutory right of action in favor of parties to article 81 proceedings, pursuant to which powers, delegations, contracts, conveyances and dispositions may be revoked *or* annulled" (emphasis added)]). A marriage revoked under Mental Hygiene Law § 81.29 (d), unlike an annulled marriage, is void ab initio (*see Matter of H.R.*, 21 Misc 3d 1136[A], 2008 NY Slip Op 52404[U] [Sup Ct, Nassau County 2008]).[9] This distinction, often blurred, is critical to a determination of property rights.

The Appellate Division of the First Department is not the only court to void a marriage ab initio on account of the incapacity of one of the parties—*after* the death of the incapacitated person. The Appellate Division of the Second Department did so, in *Campbell v Thomas* (36 AD3d 576 [2d Dept 2007]), even though the decedent in that case had not been the subject of an article 81 proceeding.

That case also had a complicated procedural posture. Six months before decedent's death, he married without his children's knowledge, then changed the beneficiary designation of his pension from his children to his new wife, and named his new wife joint tenant of his bank accounts. After his death, when the financial transactions had been revealed, the administrator c.t.a. of decedent's will, along with others, commenced an action in Supreme Court to void decedent's marriage and his transfers to the defendant, on the basis of decedent's incapacity. (Thereafter, the administrator c.t.a. of decedent's will commenced a proceeding in Surrogate's Court to determine the validity of the surviving spouse's right of election [SCPA 1421], which proceeding was held in abeyance pending the Supreme Court determination.)

The Appellate Division, Second Department, reversing an October 1, 2004 order of the Supreme Court of Putnam County (index No. 1756/01), granted plaintiffs' motion for summary judgment and remitted the matter "for the entry of a judgment declaring null and void" decedent's marriage to defendant, the change in the beneficiary designation of his pension, and the change in the ownership of his bank accounts (*Campbell v Thomas*, 36 AD3d 576, 576 [2007], *supra*). A June 21, 2007 order of the Putnam County Supreme Court, "consistent with the

---

**9.** The court in *Matter of H.R.* (21 Misc 3d 1136[A], 2008 NY Slip Op 52404[U], *4 [2008]) invoked annulment as an available remedy in an article 81 proceeding, but declared the marriage of the incapacitated person "null and void ab initio."

ruling of the Appellate Division," declared, inter alia, defendant's marriage to decedent "null and void *ab initio*, and of no legal force and effect" and that defendant "shall have no legal rights and can claim no legal interest as a spouse" of decedent's, because decedent "was not competent at the time of the Marriage" (index No. 1756/01).[10]

Whether the Legislature intended Mental Hygiene Law § 81.29 (d) to trump Domestic Relations Law § 7, as the Appellate Division of the First Department has determined (*see Matter of Kaminester v Foldes*, 51 AD3d 528 [2008], *supra*), or whether a court has some inherent power to override that long-standing legislation, as the Appellate Division of the Second Department has determined (*see Campbell v Thomas*, 36 AD3d 576 [2007], *supra*), is not before this court. We are bound by the decision of the Appellate Division of the First Department: decedent's marriage to Foldes was void ab initio; accordingly, Foldes is not entitled to a spousal share of decedent's estate.

■ Even in the absence of the First Department's decision in this case, this court would invalidate Foldes' exercise of a spousal right of election, under the doctrine of estoppel. Elements of estoppel have been enunciated by the Court of Appeals as: "a duty to speak, a failure to speak and damage to another party directly due to this silence" (*La Porto v Village of Philmont*, 39 NY2d 7, 12 [1976] [citation omitted]). At the April 3, 2006 hearing in connection with the appointment of an article 81 guardian for decedent, when counsel, having referred to Foldes as decedent's "girlfriend," then requested the issuance of an order determining that decedent lacked capacity to marry—and the court indicated its intent to issue such order—it

---

**10.** On October 26, 2007, defendant filed a petition in Surrogate's Court, Putnam County, to compel the administrator c.t.a. of decedent's estate to account. The administrator c.t.a. contended that, the Supreme Court having declared decedent's marriage to defendant "null and void *ab initio*," defendant had no interest in decedent's estate, and therefore lacked standing to compel an accounting (*see* SCPA 2205 [2] [b]). In a May 1, 2008 decision, the Surrogate's Court of Putnam County ruled:

> "To allow Ms. Thomas to proceed on her Petition to Compel an Accounting would effectively allow her to present the same facts and law to this Court when the Supreme Court has already unequivocally found that she has not standing or right to the Estate as a spouse or beneficiary. New York State law, judicial economy and common sense dictate that she not be permitted to do so. . . . [H]er Right of Election has been determined by the Supreme Court to have no validity. Therefore the Petition to Compel an Accounting is dismissed and the Right of Election is deemed a nullity . . . ." (*Matter of Thomas*, index No. 236/01.)

became incumbent upon Foldes' counsel to disclose the existence of Foldes' one-month-old marriage to decedent (*cf. Matter of Berk*, 20 Misc 3d 691, 695 [2008], *supra*). Instead, she assumed a "posture of silence" (*La Porto v Village of Philmont*, 39 NY2d 7, 12 [1976], *supra*). Acquiescing to the stipulation, she deprived petitioner and decedent (represented by court appointed counsel) of an opportunity to obtain a revocation or annulment of such marriage during decedent's lifetime. To permit Foldes now to assert a spousal right of election, a position inconsistent with her "misleading and deceptive" silence, would be inequitable (*see La Porto v Village of Philmont*, 39 NY2d 7, 12 [1976], *supra*).

Foldes' motion to dismiss, for failure to state a cause of action, the SCPA 1421 proceeding to determine the validity of her exercise of a spousal right of election is denied. The spousal right of election exercised by Foldes is invalidated on alternative bases. Foldes' marriage to decedent having been posthumously revoked ab initio, Foldes is not decedent's surviving spouse; therefore, she has no right to an elective share of decedent's estate (*see* EPTL 5-1.1-A). Even if the marriage had not been revoked ab initio, Foldes nevertheless would be precluded from exercising a spousal right of election under the doctrine of estoppel.